AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

OCT 1 6 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No.   **1 8 M J 5 3 8 8** |
| Facebook Account 100022111331837 | ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

see Attachment A

located in the _____ **Northern** _____ District of _____ **California** _____ , there is now concealed *(identify the person or describe the property to be seized)*:

see Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Secs. 841, 846, 952, 960, 963 | Importation and Possession with intent to Distribute Controlled Substances and Conspiracy to do the same |
| 18 U.S.C. Secs. 1956, 1956(h) | Money Laundering and Conspiracy to do the same |

The application is based on these facts:

see Affidavit of Special Agent Keith Banks, Homeland Security Investigations (HSI)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Keith Banks, SA HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/16/18__

_____
*Judge's signature*

City and state:  San Diego

Hon. William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

## I

## TRAINING AND EXPERIENCE

1.     I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. I have been so employed by Homeland Security Investigations ("HSI") since 2016. I am currently assigned to the HSI Cargo-Based Smuggling Group, and I am tasked with investigating cross-border narcotics smuggling.

2.     As a Special Agent with HSI, I have participated in several investigations involving narcotics trafficking activities in violation of Title 21, United States Code, Sections 841, 846, 952, 960, 963 and money laundering and conspiracy to do the same in violation of Title 18, United States Code, Sections 1956 and 1956(h). These investigations have resulted in the arrests and convictions of individuals who have smuggled, received, and distributed controlled substances, as well as the seizure of controlled substances and proceeds of the sale of those controlled substances.

3.     I am familiar with the appearance, packaging, common usage and terminology regarding controlled substances through my training, experience, and observation. I have both assisted in and facilitated narcotics transactions utilizing undercover investigators and confidential sources throughout the Southern District of California. I am familiar with the manner of importation, distribution, and efforts that drug dealers utilize in order to detect and thwart law enforcement to ensure the successful delivery of controlled substances to their intended destination. I have been involved in the debriefing of defendants, witnesses,

1 informants and others who have knowledge of narcotics trafficking. I have
2 written, reviewed, and executed numerous search warrants. I have conducted
3 investigations concerning the concealment of narcotics proceeds, including assets,
4 monies and bank records, and the identification of co-conspirators through the use
5 of drug ledgers, telephone records and bills, photographs, and financial records. I
6 have participated in investigations that involve sophisticated electronic
7 surveillance methods to include pen registers, trap and trace devices, and court-
8 authorized wiretaps. I am aware that images and electronic communications often
9 contain metadata, which may provide evidence of the user and/or location
10 information at a relevant time. I am familiar with the methods in which narcotics
11 traffickers conduct their business, including, but not limited to, their methods of
12 importing and distributing narcotics, their use of cellular telephones, social media
13 applications, and other electronic communication methods, their use of
14 business/houses in which to store narcotics and conduct meetings, and their use
15 of numeric codes and code words to conduct their narcotics transactions.

16 4.     I have participated in the investigation of the above-described offenses and
17 individuals. The statements contained in this affidavit are based in part on
18 information derived from my personal participation in this investigation and
19 through interviews with and analysis of reports submitted by other Special Agents
20 of HSI and the Drug Enforcement Administration ("DEA"). I also base these
21 statements on my experience and background as a Special Agent of HSI, as well
22 as information provided to me by other investigators from other state and federal
23 agencies, oral reports/opinions from law enforcement agents throughout the
24 Southern District of California, and on information provided by confidential
25 sources. I am familiar with all aspects of this investigation.

26 5.     Since this affidavit is being submitted for the limited purpose of seeking the
27 search warrant specified below, I have not set forth each and every fact learned

28

during the course of this investigation, nor have I summarized each and every factual circumstance deemed to be pertinent to this case. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the requested search warrant.

6.    All dates, times, and amounts mentioned in this affidavit are best approximations. Unless otherwise stated, all times referenced in this affidavit are in Pacific Daylight Time. Electronic communications over Facebook, written or oral, have been summarized, which are subject to revision after further review and may represent only a portion of the exchanged information. All of the communications mentioned were in Spanish, but all the communications have been translated into English by a native Spanish speaking individual familiar with the investigation. I have included explanations of various instances of coded and/or veiled speech in brackets or detailed in narrative form, based on my training and experience, consultation with other law enforcement, as well as my familiarity with the facts of this investigation.

## II

## PURPOSE OF AFFIDAVIT

7.    I make this affidavit in support of an application for a search warrant of the following **Subject Account** as described in Attachment A:

(a)    Facebook account 100022111331837 (hereafter referred to as the **Subject Account**), a Facebook account investigators believe to be used by Israel Frias (AKA "Pirri") with a user ID of, "تسقشنك بقخشس". Investigators believe that **the Subject Account** was/is used to communicate with co-conspirators during narcotics trafficking events beginning on an unknown date, but as early as July 25, 2018, up to and including October 1, 2018. Facebook, Inc. is an Internet Service Provider with its primary computer information systems and other electronic

communications and storage systems, records and data located at 1601 Willow Road, Menlo Park, CA 94025.

8.      Probable cause exists to believe that the **Subject Account** contains evidence as described in Attachment B from July 25, 2018, up to and including October 1, 2018, relating to violations of Title 21, United States Code Sections 841, 846, 952, 960 and 963, and money laundering and conspiracy to do the same in violation of Title 18, United States Code, Sections 1956 and 1956(h), which includes the following:

(a)      All subscriber, location, and/or user information, all electronic communications, images, text messages, histories, phone and VoIP logs, including metadata, contacts or friend lists, profiles, method of payment, detailed billing records, access logs, backup data, transactional data, and any other files or records associated with the following account and screen name(s): Facebook account 100022111331837 (hereafter referred to as the **Subject Account**), a Facebook account investigators believe to be used by Israel Frias (AKA "Pirri") with a user ID of, "خسقشئاك بقخشس";

(b)      Communications, records, and attachments, including but not limited to, Facebook Messenger messages, private messages, chats, deleted messages, draft messages, all other communications and messages made or received, Wall postings, comments, status updates, links to photographs, articles, and other items, event postings, "check ins," and pending "Friend" requests," for the **Subject Account** tending to discuss or establish violations of Title 21, United States Code, Sections 841, 846, 952, 960 and 963, and money laundering and conspiracy to do the same in violation of Title 18, United States Code, Sections 1956 and

1956(h);

    (c)    Communications, records, and attachments, including but not limited to, Facebook Messenger messages, private messages, chats, deleted messages, draft messages, all other communications and messages made or received, Wall postings, comments, status updates, links to photographs, articles, and other items, event postings, "check ins," and pending "Friend" requests," tending to identify and/or provide location information about the subscriber to the Subject Account and any co-conspirators involved in the activities in (b) above;

    (d)    Communications, records, and attachments, including but not limited to, Facebook Messenger messages, private messages, chats, deleted messages, draft messages, all other communications and messages made or received, Wall postings, comments, status updates, links to photographs, articles, and other items, event postings, "check ins," and pending "Friend" requests," that provide context to any communications described above, such as electronic mail sent or received in temporal proximity to any relevant electronic mail and any electronic mail tending to identify users and/or the location information of the subject accounts.

9.    I believe that "Pirri" has used (and continues to use) the **Subject Account** in furtherance of trafficking narcotics from Mexico into the United States and within the United States, in violation of Title 21, United States Code, Sections 841, 846, 952, 960 and 963, and money laundering and conspiracy to do the same in violation of Title 18, United States Code, Sections 1956 and 1956(h).

## III

## PROBABLE CAUSE

10.     On or about July 25, 2018, a minor, L.J.L.M., was arrested at the San Ysidro, California Port of Entry.  Concealed on her body was approximately .48 kilograms (1.05 pounds) of a substance that field-tested positive for methamphetamine, and .64 kilograms (1.41 pounds) of a substance that field-tested positive for heroin.  L.J.L.M. admitted post-*Miranda* to smuggling the suspected narcotics from Mexico into the United States.  L.J.L.M. further admitted that she was recruited by and smuggled narcotics for "Pirri" on multiple occasions, including the July 25, 2018 smuggling event.  L.J.L.M. gave consent to search her cell phone, which revealed Facebook messages between L.J.L.M. and the **Subject Account**. I believe that those messages corroborate L.J.L.M.'s employment with "Pirri" to smuggle narcotics.  For example, in one string of the messages on Facebook messenger, the **Subject Account**, believed to be "Pirri," told L.J.L.M., "Nose mira nada" [Translation: "it won't show"]. I believe "Pirri" strapped the narcotics to L.J.L.M. before she crossed into the United States, and that he made efforts to conceal the narcotics so L.J.L.M. could cross the narcotics into the United States undetected.

11.     On or about August 2, 2018 at approximately 0740 hours, Mary Cruz MORALES Elizalde, a United States citizen, made entry into the United States from Tijuana, Baja on foot at the San Ysidro Pedestrian West Port of Entry. Customs and Border Protection Officers discovered during a search of Morales' person approximately 1.84 kilograms (4.05 pounds) of a crystalline substance which field-tested positive for the characteristics of methamphetamine.

12.     I conducted a border search of MORALES' cellphone. During that border search, I discovered Facebook Messenger conversations between MORALES and the **Subject Account**. I believe that those messages indicated that MORALES

smuggled the narcotics for "Pirri." For example, in one string of the messages on Facebook messenger, the **Subject Account** told MORALES, "La neta queria decirte que trabajaras directamente conmigo ,yo pago 800 0 900 dlls por cade jale" [Translation: "The truth wanted to tell you to work directly with me , I pay 800 or 900 for each job and its affirmative with me no games, with me you work and the same day you get your money"]. I believe that "Pirri" offered to pay MORALES $800 or $900 to smuggle narcotics into the United States from Mexico.

13.    On or about October 1, 2018 at approximately 1:15 p.m., D.A.S. and L.S., both minors, made entry into the United States from Mexico on foot at the Otay Mesa Pedestrian Port of Entry. Subsequent inspection of D.A.S.'s person resulted in the discovery of approximately .88 kilograms (1.94 pounds) of a clear, crystalline substance which field-tested positive for the characteristics of methamphetamine. Subsequent inspection of L.S.'s person resulted in the seizure of approximately 1.30 kilograms (2.87 pounds) of a crystalline substance which field-tested positive for the characteristics of methamphetamine. I conducted a border search of D.A.S.'s telephone and discovered a Facebook Messenger conversation between D.A.S.'s Facebook profile and the **Subject Account**. For example, in one string of the messages on Facebook messenger, the **Subject Account** told D.A.S. "Nmssss. Ocupo 2 morras. Tu y otra. Dile. Que haga el paro pa manana. Que le daras 400. El Mismo dia" [Translation: "What the fuck, I need 2 girls, you and another one. Tell to hook it up for tomorrow that you will give them 400 the same day. Tell that its secure"]. Based upon the investigation, I believe "Pirri" recruited D.A.S. and L.S. to smuggle narcotics into the United States for $400 through communications originating from the **Subject Account**.

## IV

## GENUINE RISKS OF DESTRUCTION OF EVIDENCE

14.    Based upon my training and experience, and the experience and training of

other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

## V

## **PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

15.    The United States has obtained very limited evidence from the consent and border searches described above, and investigators do not believe that those searches have yielded the entire context and content of the trafficking events described above.    This limited information has been helpful in assisting investigators for the limited purpose of investigating "Pirri's" narcotics trafficking endeavors with the individuals described above.    However, based upon the investigation, investigators believe that "Pirri" utilized the Subject Account to coordinate the completion of each of the events described above with other individuals including those arrested during the events described above.    For example, based upon the investigation, investigators believe that "Pirri" coordinated with others to collect the narcotics from the individuals mentioned above would they have successfully crossed into the United States. The United States has not attempted to obtain this data by any other means than the border searches of those arrested in this investigation.

## VI

## **FACEBOOK, INC.**

16.    Facebook, Inc. ("Facebook") is an Internet Service Provider ("ISP") company that, among other things, provides electronic communication services to its subscribers. Facebook's messenger service allows its subscribers to exchange electronic communications with others through the Internet.    Facebook subscribers access Facebook's services through the Internet.

17.     Subscribers to Facebook use screen names during communications with others. The screen names may or may not identify the real name of the person using a particular screen name. Although Facebook requires users to subscribe for a free Facebook account, Facebook does not verify the information provided by the subscriber for its free services.

18.     At the creation of a Facebook account and for each subsequent access to the account, Facebook logs the Internet Protocol ("IP") address of the computer accessing the account. An IP address is a unique address through which a computer connects to the Internet. IP addresses are leased to businesses and individuals by Internet Service Providers. Obtaining the IP addresses that have accessed a particular Yahoo! account often identifies the Internet Service Provider that owns and has leased that address to its customer. Subscriber information for that customer then can be obtained using appropriate legal process.

## VII

### **PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

19.     Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Facebook are not. It would be inappropriate and impractical for federal agents to search the vast computer network of Facebook for the relevant accounts and then to analyze the contents of those accounts on the premises of Facebook. The impact on Facebook 's business would be disruptive and severe.

20.     Therefore, I request authority to seize all content, including electronic communications and attachments, stored instant messages, stored voice messages, photographs, and any other content from the Facebook account, as described in Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Facebook, to protect the

privacy of Facebook subscribers whose accounts are not authorized to be searched, and to effectively pursue this investigation, HSI seeks authorization to allow Facebook to make a digital copy of the entire contents of the account(s) subject to seizure. That copy will be provided to me or to any authorized federal agent. The copy will be imaged and the image will then be analyzed to identify communications and other electronic records subject to seizure pursuant to Attachment B. Relevant electronic records will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

21.    Analyzing the data to be provided by Facebook may require special technical skills, equipment, and software. It may also be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keyword searches do not capture misspelled words, reveal the use of coded language, or account for slang. Keyword searches are further limited when electronic records are in or use foreign languages. Certain file formats also do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text. Instead, such data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically. ISPs, generally, do not always organize the electronic files they provide chronologically, which makes review even more time consuming and may also require the examiner to review each page or record for responsive material.

22.    Based on the foregoing, searching the recovered data for the information

subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained and, depending on the organization, format, and language of the records provided by Facebook, examiners may need to review each record to determine if it is responsive to Attachment B. The personnel conducting the examination will complete the analysis within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

23.     Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic communications that identify any users of the subject account(s) and any electronic mails sent or received in temporal proximity to incriminating electronic communications that provide context to the incriminating communications.

24.     All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## VIII

## REQUEST FOR SEALING AND PRECLUSION OF NOTICE

25.     This is an ongoing investigation of which the targets are unaware, and the investigation is likely to continue for another 180 days. It is very likely, based upon the above, that evidence of the crimes under investigation exists on electronic devices subject to the control of the targets. There is reason to believe, based on the above, that premature disclosure of the existence of the warrant will result in flight from prosecution as the user of the Subject Account has not yet been fully identified and many of his co-conspirators have not been identified, destruction or tampering of the Subject Account and may otherwise seriously

jeopardize the success of the investigation.  Accordingly, it is requested that this warrant and its related materials be sealed until further order of the Court.  In addition, pursuant to Title 18, United States Code, Section 2705(b), it is requested that this Court order the electronic service provider to whom this warrant is directed not to notify anyone of the existence of this warrant, other than its personnel essential to compliance with the execution of this warrant, until April 13, 2019, absent further order of the court.

## IX

## CONCLUSION

26.     Based on the foregoing, there is probable cause to believe that the items identified in Attachment B have been used in the commission of a crime and constitute evidence of violations of Title 21, United States Code Sections 841, 846, 952, 960 and 963, and money laundering and conspiracy to do the same in violation of Title 18, United States Code, Sections 1956 and 1956(h), and will be found in the account to be searched as provided in Attachment A.

Keith Banks
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this __16__ day of October, 2018.

HONORABLE WILLIAM V. GALLO
UNITED STATES MAGISTRATE JUDGE